## CIRCUIT COURT OF THE CITY OF RICHMOND

Pence Automotive Group

v.

Auto Center, Inc., etc.,
Chrysler Corporation,
Page Dodge, Inc., and
Department of Motor Vehicles

Case No. HD–893–4

By Judge Randall G. Johnson

October 8, 1993

This is an appeal under the Administrative Process Act from a decision of the Department of Motor Vehicles (DMV) which denied a hearing under Va. Code § 46.2–1569(4). The appellant is Pence Automotive Group. The appellees are Auto Center, Inc., d/b/a Southside Dodge; Chrysler Corporation; Page Dodge, Inc.; and DMV. Presently before the court are appellees' motions to dismiss, which all contain two grounds: first, that appellant lacks standing to prosecute the appeal, and second, that the decision of DMV is correct and should· be affirmed. At the hearing on appellees' motions, the court ruled that the second ground, the alleged correctness of DMV's decision, is not an appropriate subject of a motion to dismiss since that issue is the very essence of the appeal. The issue of appellant's standing, however, was taken under advisement, and it is that issue which the court will now address.

Virginia Code § 46.2–1569(4) deals with the granting by motor vehicle manufacturers of additional franchises in a "relevant market area." Simply put, the statute sets limits on a manufacturer's ability to put a new dealership in an area where a dealer in the same make of

vehicles already exists. Among the statute's provisions is the following:

> No such additional franchise may be established at the proposed site unless the [DMV] Commissioner has determined, if requested by a dealer of the same line-make in the relevant market area within thirty days after receipt of the franchisor's notice of intention to establish the additional franchise, and after a hearing on the matter, that there is reasonable evidence that after the grant of the new franchise, the market will support all of the dealers in that line-make in the relevant market area.

The statute also provides, however, that:

> This subdivision shall not apply to (i) the relocation of an existing dealer within that dealer's relevant market area if the relocation site is to be more than ten miles distant from any other dealer for the same line-make . . . .

By letter dated May 5, 1993, the Washington Zone Manager of Chrysler Corporation notified "Mr. George Pence, Pence Chrysler-Plymouth-Dodge," that Chrysler was in the process of recommending approval of Page Dodge, Inc.'s purchase of Auto Center, Inc.'s Dodge franchise, and the relocation of that franchise to 6700 Mechanicsville Turnpike in Mechanicsville, Virginia. On May 28, 1993, George M. Pence, III, wrote a letter to the Commissioner of DMV. The letter was written on stationery of "Pence Automotive Group," and read as follows:

> Dear Commissioner Williams:
>
> Within the last thirty days I have received a letter from Chrysler Corporation, indicating a proposal to relocate Southside Dodge from its current Relevant Market Area into the R.M.A. occupied by my dealership, Al Smith Chrysler, Plymouth Dodge t/a Pence Chrysler Plymouth Dodge. A copy of the notice is enclosed herewith.
>
> Al Smith Chrysler, Plymouth, Dodge t/a Pence Chrysler Plymouth Dodge hereby protests this intended relocation and requests a hearing under Section 46.2-1569(4) of the Code of Virginia (1950), as amended, to prohibit such additional Dodge dealership in my relevant market area unless the manu-

facturer can prove by clear and convincing evidence that the market will support all dealers, including Southside Dodge in that line-make.

The letter was signed "George M. Pence, III, President."

By letter dated June 23, 1993, and addressed to "Mr. George M. Pence, III, President, Pence Automotive Group," DMV denied the request for a hearing, holding that the proposed transaction was a relocation of an existing franchise, so that the language of § 46.2–1569(4)(i) applied. After a request for reconsideration was denied, the petition for appeal now under consideration was filed in this court, naming as appellant "Pence Automotive Group." It is appellees' contention that such entity, Pence Automotive Group, lacks standing to pursue the appeal.

Pence Automotive Group is not a legal entity. In fact, at the hearing on defendants' motions to dismiss, counsel for appellant tendered to the court a "Motion to Amend Misnomer." In that motion, and in the affidavit of George M. Pence, III, attached to it, appellant concedes that "[t]he correct name for the legal entity known as Pence Automotive Group is Pence Holdings, Inc." This discrepancy, however, is not the real issue before the court. If it were, it would quickly be resolved by granting appellant's motion, since such misnomers are precisely what Va. Code § 8.01-6 is designed to correct. The real issue is whether the appellant, whether called Pence Automotive Group or Pence Holdings, Inc., has standing to appeal DMV's decision at all.

Section 46.2–1569's provisions requiring DMV approval of franchise locations apply only "if requested by a *dealer* of the same line-make . . . ." Emphasis added. While appellant argues that Pence Holdings, Inc., is a dealer, the court holds that it is not.

Pence Holdings, Inc., is a holding company. It owns 100% of the stock of several automobile dealerships in the Richmond area, including Al Smith Chrysler-Plymouth, Inc., d/b/a Pence Chrysler-Plymouth-Dodge. Its president, treasurer, and sole director is George M. Pence, III. It is not, however, a dealer.

A "motor vehicle dealer" or "dealer" is defined in the Virginia Code as any person who:

> 1. For commission, money, or other thing of value, buys, sells, exchanges, either outright or on conditional sale, bailment lease, chattel mortgage, or otherwise or arranges or of-

fers or attempts to solicit or negotiate on behalf of others a sale, purchase, or exchange of an interest in new motor vehicles, new and used motor vehicles, used motor vehicles alone, or trailers or semitrailers, whether or not the motor vehicles, trailers, or semitrailers are owned by him; or

2. Is wholly or partly engaged in the business of selling new motor vehicles, new and used motor vehicles, or used motor vehicles only, or trailers or semitrailers, whether or not the motor vehicles are owned by him; or

3. Offers to sell, sells, displays, or permits the display for sale, of five or more motor vehicles, trailers, or semitrailers within any twelve consecutive months.

Va. Code § 46.2–1500.

Pence Holdings, Inc., does none of the things listed above. It owns stock in corporations that do. The fact that a person owns stock in a utility company does not make that person a utility. The fact that Pence Holdings, Inc., owns stock in dealerships does not make Pence Holdings, Inc., a dealer. In fact, when George Pence filed his protest with DMV, and although his letter was on Pence Automotive Group stationery, he specified that "Al Smith Chrysler, Plymouth, Dodge t/a Pence Chrysler Plymouth Dodge hereby protests this intended relocation and requests a hearing . . . ." The problem is that when the appeal was filed here, it was filed not in the name of the dealership, but in the name of the holding company.

At this point, it must be noted that none of the appellees do, or can, claim prejudice, surprise, lack of notice, or anything else other than a purely technical failure to name the correct entity on appeal. But, unlike the Pence Automotive Group-Pence Holdings, Inc., discrepancy, the entity which is named *is* a distinct legal entity. It is not a misnomer; it is a different company. If it does not have standing to appeal, the appeal must be dismissed. I hold that it does have standing.

Virginia Code § 46.2–1577 gives "[a]ny person aggrieved by [an] action of the Commissioner" the right to judicial review under the Administrative Process Act, Va. Code § 9–6.14:1 *et seq.* Section 9–6.14:16 provides, in pertinent part:

Any person affected by and claiming the unlawfulness of any regulation, or party aggrieved by and claiming unlawfulness of a case decision . . . shall have a right to the direct review

thereof by an appropriate and timely court action against the agency as such or its officers or agents in the manner provided by the rules of the Supreme Court of Virginia.

Thus, two classes of appellants are defined under the Administrative Process Act. First, in those cases in which a regulation is claimed to be unlawful, any *person* affected by the regulation may appeal. Such person need not be a party to any other proceeding, but simply a "person affected by and claiming the unlawfulness of" the regulation.

With regard to case decisions, however, the situation is different. In those cases, only a "*party* aggrieved by and claiming unlawfulness of" the decision may appeal. Since it is a case decision which is being challenged here, only a party may appeal. And since, as previously discussed, only a dealer can request a hearing before DMV, and since Pence Holdings, Inc., is not a dealer, appellees assert that Pence Holdings, Inc., could not have been a party to the proceedings at DMV, and therefore cannot be a party-appellant. While appellees' position has considerable logic, it does not take into account the peculiar facts of this case.

As previously pointed out, when George Pence wrote to DMV to protest the impending transaction, he properly did so on behalf of "Al Smith Chrysler, Plymouth, Dodge t/a Pence Chrysler Plymouth Dodge," which is a dealer under the Code. All of the correspondence from George Pence, however, was written on Pence Automotive Group stationery. Moreover, when DMV responded to Mr. Pence, it addressed its letters not to Al Smith Chrysler-Plymouth, etc., but to George M. Pence, III, President, *Pence Automotive Group*. Thus, DMV's June 23, 1993, letter announcing its rejection of the request for a hearing was addressed to Mr. Pence, President, Pence Automotive Group. So, too, was its letter of July 8, 1993, denying reconsideration. In fact, neither of those letters makes any mention at all of Al Smith Chrysler-Plymouth, etc. Instead, they refer to "your" letters, "your" inquiry, and the hearing "you" requested. In addition, in a July 8, 1993, letter to appellant's counsel, DMV refers to said counsel's letter concerning "your client, Mr. George Pence." DMV then addresses the merits of the challenge under § 46.2–1569(4), including the "position[] taken by . . . Mr. Pence . . . ." Thus, at every stage of these proceedings, until now, DMV, at least, has treated Pence Automotive Group, through its president George M. Pence, III, as the real party in interest. Only now, when they believe they can defeat the appeal through a technicality, do

DMV and the other appellees allege, for the first time ever, that Pence Automotive Group is not a proper party. I hold that DMV, having consistently and continuously treated Pence Automotive Group as a party to the administrative proceedings, is now estopped from claiming it was not. Similarly, the other appellees, having no direct involvement in DMV's decision other than providing requested information to DMV and having also acquiesced in DMV's treatment of Pence Automotive Group as a party are likewise estopped from challenging appellant's standing to appeal. Accordingly, appellees' motions to dismiss are denied. Moreover, since the naming of appellant as Pence Automotive Group instead of Pence Holdings, Inc., was an obvious misnomer correctable under Va. Code § 8.01–6, appellant's motion to amend misnomer is granted.

(Actually, a further, even ironic, reason exists for denying the non-DMV appellees' motions to dismiss if a technical, literal reading of the statutes and rules is insisted upon by those appellees. Rule 2A:1 of the Rules of the Supreme Court of Virginia, which deals with appeals under the Administrative Process Act, parrots Va. Code § 9–6.14:16's definition of a party. *See supra*. Rule 2A:2 then provides that notice of an appeal must state the names of all parties, and that a copy of the notice must be sent to those parties. But if a "party" is a person or party *aggrieved* by administrative action, the non-DMV appellees are not parties since they were not aggrieved by DMV's decision. Obviously, such a literal reading of the term "party" is not warranted. Neither is it warranted with respect to appellant under the facts of this case.)

### December 1, 1993

This is an appeal under the Administrative Process Act from a decision of the Department of Motor Vehicles. The appellant is Pence Holdings, Inc. The appellees are Auto Center, Inc., d/b/a Southside Dodge; Chrysler Corporation; Page Dodge, Inc.; and DMV. At issue is whether DMV properly denied a hearing under Va. Code § 46.2–1569(4), which deals with the granting by motor vehicle manufacturers of additional franchises in a "relevant market area." In essence, the statute sets limits on a manufacturer's ability to put a new dealership in an area where a dealer in the same make of vehicles already exists. Among the statute's provisions is the following:

> No such additional franchise may be established at the proposed site unless the [DMV] Commissioner has determined, if requested by a dealer of the same line-make in the relevant market area within thirty days after receipt of the franchisor's notice of intention to establish the additional franchise, and after a hearing on the matter, that there is reasonable evidence that after the grant of the new franchise, the market will support all of the dealers in that line-make in the relevant market area.

The statute also provides, however, that:

> This subdivision shall not apply to (i) the relocation of an existing dealer within that dealer's relevant market area if the relocation site is to be more than ten miles distant from any other dealer for the same line-make . . . .

By letter dated May 5, 1993, Chrysler Corporation notified Pence that Chrysler was in the process of recommending approval of Page Dodge's purchase of Auto Center's Dodge franchise, and the relocation of that franchise to 6700 Mechanicsville Turnpike in Mechanicsville, Virginia. Pence requested a hearing. By letter dated June 23, 1993, DMV informed Pence that based on the information before it, the planned sale and relocation constituted a relocation of an existing dealership within that dealer's "area of responsibility," and that such relocation was at a point more than ten miles from Pence.[1] Accordingly, no hearing was granted. After DMV denied Pence's request for reconsideration, this appeal was filed.

Virginia Code § 9–6.14:17, part of the Administrative Process Act, provides in pertinent part as follows:

> § 9–6.14:17. *Issues on Review.* — The burden shall be upon the party complaining of agency action to designate and demonstrate an error of law subject to review by the court. Such issues of law include . . . (iv) the substantiality of the evidential support for findings of fact. The determination of such fact

---

[1] DMV later conceded that the phrase "area of responsibility" should have been "relevant market area." Pence does not rely on this misnomer as a ground for reversal. It is also conceded that the new location is more than ten miles from Pence's dealership.

issue is to be made upon the whole evidential record provided by the agency . . . .

It is Pence's position that there is nothing in DMV's evidential record to support DMV's conclusion that the transaction between Chrysler, Page, and Auto Center in this case was a "relocation of an existing dealer" rather than a creation of a new dealership. Specifically, Pence points to the fact that other than the May 5, 1993, letter from Chrysler, the record is void of any facts as to when the sale occurred, whether the "relocation" was made before or after the sale, and whether, if the relocation *was* made after the sale, Page was a "dealer" at the time of relocation. These facts are crucial, according to Pence, because it is only the relocation of an *existing dealer* which does away with the hearing requirement of § 46.2–1569(4). Thus, if the Dodge franchise was sold before relocation, and if Page was not a dealer at the time of the move, there was no relocation of an existing dealer, and a hearing was required.

While the court agrees with Pence that the agency's record *is* void of facts to support its finding on relocation, and while such deficiency in the record would normally require a remand to the agency, a remand will not be ordered here. This is so because of Pence's communications with DMV.

In *School Board v. Nicely*, 12 Va. App. 1051 (1991), the court stated:

> [U]nder the VAPA, the circuit court's role in an appeal from an agency decision is equivalent to an appellate court's role in an appeal from a trial court. In this sense, the General Assembly has provided that a circuit court acts as an appellate tribunal.

12 Va. App. at 1062.

One of the most fundamental rules of appellate procedure is that matters raised for the first time on appeal will not be considered by the appellate court. *See, e.g., Railway Co. v. Cohen Weenen & Co.*, 156 Va. 313, 157 S.E. 563 (1931); *Berger v. Commonwealth*, 217 Va. 332, 228 S.E.2d 559 (1976). Appellees argue that this rule, often referred to as the "contemporaneous objection rule," applies to proceedings under the Administrative Process Act, and that Pence is thereby precluded from raising the relocation issue now. While the court is unwilling at this time to hold that the contemporaneous objection rule applies to the

Administrative Process Act generally, Pence's arguments to DMV in this particular case require its application here.[2]

In its May 28, 1993, letter to DMV requesting a hearing, Pence "protest[ed] this intended *relocation* and request[ed] a hearing under Section 46.2–1569(4) of the Code of Virginia of 1950, as amended . . . ." Emphasis added. Similarly, in a June 10, 1993, letter to DMV, Pence offered the following reasons as to why the exception to the hearing requirement did not apply:

(1) The relocating dealer is moving outside of his current Relevant Market Area as defined in Section 46.2-1500;

(2) The relocating dealer is proposing to move into my Relevant Market Area (see supporting documentation from Technical Associates);

(3) In view of (1) and (2), above, the relocating dealer is not entitled to the exceptions contained in the last sentence of 46.2–1569(4) and, therefore, should be treated as an "additional franchise" for that line-make in my Relevant Market Area.

By letter dated June 29, 1993, which was written after DMV had denied Pence's request for a hearing, Pence wrote:

---

[2] There are two reasons why the court is reluctant to apply the contemporaneous objection rule to APA appeals generally. First, while there are specific rules in the Virginia Supreme Court and Virginia Court of Appeals establishing the contemporaneous objection rule in those courts (*see* Rules 5:25 and 5A:18 of the Rules of the Supreme Court of Virginia), there is no such formal rule under the APA. Second, appellee's argument in favor of a general application was only made at oral argument, and the court feels that considerably more research needs to be done by affected litigants before such a weighty decision is made.

The court does note, however, that support for appellees' argument appears to be present in the Supreme Court's discussion in *Virginia Bd. of Medicine v. Fetta*, 224 Va. 276, 421 S.E.2d 410 (1992). There, Dr. Fetta, a chiropractor, challenged certain proceedings before the Board of Medicine as being contrary to law, and both the majority and the dissent spent considerable time discussing whether Dr. Fetta had adequately made and preserved his objections to what he alleged to be unlawful procedures as they occurred. The dissent went so far as to say that Rule 5:25 applied (244 Va. at 284), and the majority specifically found that Dr. Fetta had adequately objected. It is hard to imagine why the court engaged in such a lengthy discussion of Dr. Fetta's objections unless it was of the opinion that such objections were required; that is, that the contemporaneous objection rule applies to APA appeals. Still, no specific pronouncement of such general application by the Supreme Court was made in *Fetta*, and I am unwilling to do so based on the record here.

Referring to your letter of June 23, please elaborate with regard to the manner in which you have determined that Southside Dodge is relocating within that dealer's relevant market area. As you are aware, Virginia Code Section 46.2–1569(4) speaks to "relevant market area," not area of responsibility.

Finally, in a five-page letter dated July 7, 1993, Pence's legal counsel, seeking reconsideration of DMV's decision not to hold a hearing, also talks about "the relocating dealer," and the "relocation of Southside Dodge." Nowhere in that letter is any claim or argument made that the subject transaction was not a relocation of an existing dealer. Instead, it was asserted that DMV had improperly defined "relevant market area," and had misapplied the concept of legal standing when it stated in its June letter that Pence did not have standing to request a hearing.[3] Thus, far from merely being silent on the relocation issue, or passively acquiescing in DMV's statement that there was a relocation, Pence actually confirmed, in each of Pence's letters cited above, that there *was* a relocation of an existing dealer, and that the only issue for DMV to determine was whether that relocating dealer was or was not moving into a new relevant market area. Because Pence never took issue with DMV's classifying the transaction as a relocation, and in fact affirmatively and repeatedly characterized the transaction as a relocation itself, Pence is now estopped from arguing that the transaction was not a relocation. Thus, while the court is unwilling to hold that the contemporaneous objection rule applies to the APA generally, the court does hold that the position which Pence takes in this court is inconsistent with the position it took before DMV. It will not be allowed to do so.

Turning now to the issue which was raised by Pence before DMV, the court finds that DMV properly determined that the Dodge dealership, whether Page Dodge or Southside Dodge, was moving to a site within its existing relevant market area. Va. Code § 46.2-1500 defines relevant market area as follows:

"*Relevant market area*" means the area within a radius of twenty miles around an existing franchised dealer or the area of responsibility defined in the franchise, whichever is greater,

---

[3] The court is also puzzled by DMV's use of the word "standing" in denying a hearing. The use of that word, however, makes absolutely no difference here.

except that where a franchisor is seeking to establish an additional new motor vehicle dealer, the relevant market area shall be as follows:

1. In metropolitan localities, the relevant market area shall be a circular area around an existing franchised dealer with a population of 250,000, not to exceed a radius of ten miles but in no case less than seven miles.

2. If the population in an area within a radius of ten miles around an existing franchised dealer is less than 250,000, but the population in an area within a radius of fifteen miles around an existing franchised dealer is 150,000 or more, the relevant market area shall be that area within the fifteen mile radius.

DMV determined that Page/Southside Dodge's relevant market area was as "defined in the franchise;" to wit: a 1990 Sales and Service Agreement between Chrysler and Southside Dodge which specifically included Mechanicsville in Southside's "Sale Locality Description." Pence argues that such definition does not apply, since what really occurred was the establishment of an additional new motor vehicle dealer. Thus, according to Pence, Southside's relevant market area should have been determined under subsection (1) or (2) above, and not by the definition contained in the franchise. This argument is without merit. Having found that the subject transaction was a relocation of an existing dealer under § 46.2-1569(4), it would be ludicrous to now hold that that same transaction was really the establishment of a new dealership under § 46.1-1500. Whatever the nature of the transaction, it was the same no matter which code section it is judged by. For the reasons already stated, and which will not now be repeated, DMV's finding with reference to the relevant market area will be affirmed.

The court notes that there were other arguments made by appellant and responded to by appellees, including arguments about the meaning of franchise and dealer, whose relevant market area is relevant, and other matters dealing with statutory interpretation. The court rejects all of those arguments. Moreover, because the statutes involved are so totally unambiguous and straightforward, no further comment is warranted.

For all of the foregoing reasons, the decision of DMV not to grant a hearing to Pence Holdings, Inc., is affirmed.