COURT OF APPEALS OF VIRGINIA

Present: Judges Fitzpatrick, Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia


JOYCE ELAINE CHAMBERS

MEMORANDUM OPINION[*] BY
v.       Record Nos. 1623-95-4     JUDGE JOHANNA L. FITZPATRICK
           through 1629-95-4          MARCH 11, 1997

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Benjamin N. A. Kendrick, Judge

Bobby B. Stafford (Kathryn E. Coward; Raby &
Stafford, on brief), for appellant.

Michael T. Judge, Assistant Attorney General
(James S. Gilmore, III, Attorney General, on
brief), for appellee.


Joyce Elaine Chambers (appellant) was tried jointly with

Richard Lawrence Randolph (Randolph), and Alice Lavada Coffey

(Coffey), and was convicted in a jury trial of grand larceny,

credit card theft, and conspiracy to commit a felony.  On appeal,

she argues that the trial court erred in:  (1) denying her motion

to sever and (2) limiting her cross-examination of the

Commonwealth's witness.[1]  For the reasons that follow, we reverse

_____

[*]Pursuant to Code § 17-116.010 this opinion is not

designated for publication.

[1]Because we reverse on the cross-examination issue, we do

not address the severance issue.  However, we address the

severance issue in the companion case Randolph v. Commonwealth,

___ Va. App. ___, ___ S.E.2d ___ (1997) (holding joint trial not

the convictions.

On the evening of July 24, 1994, Sergeant Kenneth Hutton (Hutton) of the Metropolitan Washington Airport Authority (MWAA) was on pickpocket detail at National Airport. He first observed Randolph, with a green garment bag draped over his shoulder, walking toward the United Airlines section of the airport. In the American Airlines baggage claim area, Hutton saw Randolph approach several people from behind who were waiting to claim their baggage. Randolph stood within inches of each person for a few minutes and then moved on to another person. He never claimed any baggage. Next, he went to the cab stand outside the Northwest Airlines baggage claim area and approached several people in the same manner.

When Randolph left the cab stand, he got into the front passenger seat of a green Mercury automobile driven by appellant and put the green garment bag in the backseat. A few minutes later, Sergeant Alan Pelleranan (Pelleranan), a MWAA officer, saw the car driven by appellant arrive at the U.S. Air terminal with Randolph, Coffey, and Linda Williams (Williams). Appellant, Randolph, and Williams went into the terminal. When Hutton arrived at the terminal, he saw appellant and Randolph exit the terminal and walk over to the shuttle bus stop. Randolph again

error where codefendant's confession implicates both defendants and statement is otherwise admissible.)

approached people from behind while appellant stood about fifteen feet away, looking around. Appellant and Randolph returned to the Mercury, which Coffey had parked nearby. Pelleranan apprehended Williams inside the terminal and brought her to the car.

Upon her arrest and after being advised of her <u>Miranda</u> rights, Hutton asked appellant "why she had come to the airport." She answered: "To steal . . . to pick pockets." Hutton wrote in his notes that: "Subject #3 [appellant] advised us in the interview that on the way over to National Airport from the D.C. Convention Center [S]ubject[] #1 [Williams] and Subject #2 [Randolph] discussed stealing. She further advised us that she knew the reason they were coming to the airport was to steal (pick-pocket)."

Appellant, Randolph, and Coffey were indicted for grand larceny, credit card theft, and conspiracy to commit a felony, and were scheduled to be tried jointly. Prior to trial, Randolph and Coffey objected to the admission of appellant's statement, and all three codefendants requested to be tried separately. The court denied the motions.

On the morning of trial, when the codefendants renewed their motions to sever, the Commonwealth suggested redacting appellant's statement from "<u>we</u> came to steal" to "<u>I</u> came to steal." (Emphasis added). Appellant objected to the redaction and argued that it would negate the conspiracy theory, and that

3

it was prejudicial to her because it gave the other defendants "a license to dump it on her to exonerate" themselves. The trial court ruled that "[t]he motion to sever is denied. The statement is admissible if it's redacted to, [']I came to steal,['] where it's clear there[] [are] no references to the other individuals that are on trial."

During the joint trial, codefendant Randolph requested a limiting instruction that would direct the jury to consider the statement only in reference to appellant. The Commonwealth argued that the statement required no such instruction, because it was admissible as a declaration against penal interest. In response, appellant asserted that redacting her statement would be "tantamount to instructing the jury that she is saying that, I came over her[e] to steal." Appellant also contended that the redaction would make cross-examination more difficult because she would not be able to "cross-examine on the 'we,' the context, who was there, who is included in the statement and so forth." The court held that the statement was "admissible if it's redacted to 'I came to steal.'"

> At trial, Hutton testified that appellant told him that she came to the airport "to steal . . . to pick pockets." During cross-examination, appellant questioned Hutton about his written notes, and Hutton admitted that his testimony regarding appellant's confession was not an

4

exact quote. Appellant then asked Hutton: "[I]sn't it correct that your summary of that statement suggests that they came over to steal?" (Emphasis added). The trial court sustained codefendant Coffey's objection, and required appellant to question Hutton further regarding his report out of the presence of the jury. Hutton testified that although he wrote "they," appellant actually used the word "we." The court ruled that appellant could not introduce the reference to "they" because of "the authority [appellant's counsel] relied on [Berger v. Commonwealth, 217 Va. 332, 228 S.E.2d 559 (1976)]." Appellant argued that she was "not saying in that statement that she came over here to steal," but "that others came over here to steal." (Emphasis added). In response to Randolph's objection to "anybody asking any question about any of the details of that statement," the court told appellant's counsel that he would not be allowed to ask questions regarding the written statement as reflected in Hutton's report, and if he did, he would be held in

5

contempt. The court directed: We spent
hours talking about this and [appellant's
counsel] asked the question anyway. . . . I
am telling [appellant's counsel] in no
uncertain terms that if [he] [tries] to
deliberately cause a mistrial on areas that
[he] know[s] [he] should not ask, [he] will
be held in contempt to Court. [He] may get
the mistrial but [he'll] get more than that.

On March 23, 1995, appellant was convicted of grand larceny, credit card theft, and conspiracy to commit a felony. On appeal, appellant argues that the trial court erred in (1) limiting her cross-examination of the Commonwealth's witness regarding her confession, and (2) overruling the motions to sever and subsequently admitting a redacted statement attributed only to appellant.

In a separate trial, appellant's unredacted statement would have been admissible against the codefendants under the declaration against penal interest exception to the hearsay rule and against appellant as a party admission. See Scaggs v. Commonwealth, 5 Va. App. 1, 4-5, 359 S.E.2d 830, 831-32 (1987) ("[I]t is settled in Virginia that . . . a declaration against penal interest is recognized as an exception to the hearsay rule. . . ."), and Alatishe v. Commonwealth, 12 Va. App. 376,

378, 404 S.E.2d 81, 82 (1991) ("Any statement by a party to the proceedings . . . is admissible as an exception to the hearsay rule when offered against that party."). Appellant argues that redaction was inappropriate in this case because it changed the meaning of her original statement and it failed to "solve a conflict that only severance could adequately alleviate."

In the instant case, appellant's response to Hutton's question about the codefendants' purpose in being at the airport was contested. The trial court redacted appellant's original response that Williams and Randolph discussed stealing and that she knew "they" were coming to the airport "to steal" to "I came to steal." This change "radically alter[ed] the meaning" of the statement. See Pugliese v. Commonwealth, 16 Va. App. 82, 90, 428 S.E.2d 16, 23 (1993), and United States v. Washington, 952 F.2d 1402, 1404 (D.C. 1991), cert. denied, Jones v. United States, 503 U.S. 1009 (1992). Further, the limitation on cross-examination of the context of the statement compounded the detrimental effect of the redaction. Thus, appellant argues, the trial court improperly limited her cross-examination of Hutton regarding her confession, which was "the most crucial part of the evidence against her." We agree.

"Cross-examination of prosecution witnesses 'is "fundamental to the truth-finding process and is an absolute right guaranteed to an accused by the [C]onfrontation [C]lause of the [S]ixth [A]mendment."'" Maynard v. Commonwealth, 11 Va. App. 437, 444,

7

399 S.E.2d 635, 639 (1990) (en banc) (quoting <u>Williams v. Commonwealth</u>, 4 Va. App. 53, 77-78, 354 S.E.2d 79, 93 (1987) (citations omitted)).  "Subject to such <u>reasonable</u> limitations as the trial court may impose, a party has an absolute right to cross-examine his opponent's witness on a matter relevant to the case, which the opponent has put in issue by direct examination of the witness."  <u>Id.</u> (citation omitted) (emphasis added).  "Limitation of cross-examination is a matter within the sound discretion of the trial court and is subject to review only for abuse of discretion."  <u>Naulty v. Commonwealth</u>, 2 Va. App. 523, 529, 346 S.E.2d 540, 543 (1986) (citation omitted).[2]

---

[2]<u>See also</u> <u>United States v. Gravely</u>, 840 F.2d 1156, 1163 (4th Cir. 1988) (citing <u>United States v. Atwell</u>, 766 F.2d 416, 419-20 (10th Cir. 1985), <u>cert. denied</u>, 474 U.S. 921 (1985)) ("limiting the extent of cross-examination is within the discretion of the trial court and does not warrant reversal absent an abuse of discretion clearly prejudicial to the defendant"), and <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 678 (1986) ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose <u>reasonable</u> limits on such cross-examination based on concerns about, among other things, harassment, <u>prejudice</u>, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.") (emphasis added).

"In exercising that discretion, the trial judge may appropriately consider whether the proposed cross-examination would unfairly prejudice a co-defendant."  United States v. Bodden, 736 F.2d 142, 145 (4th Cir. 1984) (citing United States v. Dansker, 537 F.2d 40 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977)).  A restriction on cross-examination to avoid unfair prejudice to a codefendant when the probative value of the excluded evidence is slight will be upheld.  See, e.g., United States v. Tarantino, 846 F.2d 1384, 1400 (D.C. Cir.) (per curiam), cert. denied, 488 U.S. 840 (1988).

Regarding oral utterances "[t]he general rule . . . is . . . that the substance or the effect of the actual words spoken will suffice, [and] the witness . . . may give his 'understanding' or 'impression' as to the net meaning of the words heard."  Pierce v. Commonwealth, 2 Va. App. 383, 388, 345 S.E.2d 1, 4 (1986) (citations omitted).  However, "[w]hen a confession is admissible, the whole of what the accused said upon the subject at the time of making the confession is admissible and should be taken together . . . the accused is entitled to put in evidence all that was said to and by him at the time . . . including any exculpatory or self-serving declarations connected therewith."  Id. at 389, 345 S.E.2d at 4 (emphasis added).

In the instant case, the trial court restricted appellant's cross-examination of Hutton regarding the actual words and context of her confession.  It prevented her from eliciting

potentially exculpatory evidence or exploring any ambiguity in the original statement. Although the trial court attempted to redact appellant's statement to prevent possible prejudice to the codefendants, see Randolph v. Commonwealth, ___ Va. App. ___, ___, ___ S.E.2d ___, ___ (1997), the court's restriction of appellant's cross-examination regarding the context of the statement and of the circumstances surrounding its making was prejudicial to her.

We cannot say, when looking at this record, that the error was harmless, as the statement was the primary evidence linking appellant to the crimes. Accordingly, we hold that the court abused its discretion, and we reverse and remand this case for further proceedings.

Reversed and remanded.